**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **CARRIE PLOWMAN** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | **CIVIL ACTION NO.: _____** |
| § | |
| **GENESYS CLOUD SERVICES, INC,** § | |
| **AND ITS FORMER D/B/A,** § | |
| **GENESYS TELECOMMUNICATION** § | |
| **LABORATORIES INC.** § | |
| § | **JURY DEMANDED** |
| *Defendants.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Carrie Plowman ("Ms. Plowman"), by and through her attorneys, TB Robinson Law Group, PLLC, and brings this action against Genesys Cloud Services, Inc., and its former d/b/a, Genesys Telecommunication Laboratories, Inc. ("Genesys" or "Defendants"), pursuant to the Americans with Disabilities Act, 42 U.S.C., §12101, et. seq. ("ADA"), and for cause of action would show the following:

### I. NATURE OF CLAIMS

1. This action is filed pursuant to the Americans with Disabilities Act, 42 U.S.C., §12101, et. seq. ("ADA"), to remedy acts of disability discrimination and retaliation.

2. Ms. Plowman seeks equitable relief, back and future pay, lost benefits, reinstatement, compensatory and punitive damages for violations of the ADA suffered by Ms. Plowman during her employment with Genesys.

## II. PARTIES

3.  Plaintiff Carrie Plowman is an individual who resides in Willis, Montgomery County, Texas. Ms. Plowman is a former employee of Genesys Cloud Services, Inc., then doing business as Genesys Telecommunications Laboratories, Inc.

4.  Defendants Genesys Cloud Services, Inc., and its former d/b/a, Genesys Telecommunications Laboratories, Inc., is an American software company that sells customer experience (CX) and call center technology to mid-sized and large businesses. It sells both cloud-based and hybrid cloud software and has its headquarters located in Menlo Park, California. Genesys may be served with process by serving their registered agent, Corporate Service Company d/b/a CSC-Lawyers Incorporated Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

## III. JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Ms. Plowman is bringing this claim pursuant to the Americans with Disabilities Act, 42 U.S.C., §12101, et. seq.

6.  Pursuant to 42 U.S.C. § 12112 and 28 U.S.C. §1391(b)(2), venue is proper in this district because a substantial part of the events or omissions giving rise to these causes of actions, including the unlawful employment practices, occurred in Montgomery County, Texas, which is in this judicial district.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.  On December 19, 2023, Ms. Plowman timely filed a charge of discrimination, EEOC Charge No.460-2024-01888, against Genesys with the Houston Division of the U.S. Equal Employment Opportunity Commission ("EEOC").

8. On August 28, 2024, Ms. Plowman received a Notice of Right to Sue dated August 28, 2024 from the EEOC. Ms. Plowman files this complaint within 90 days after receiving a notice of the right to sue from the EEOC.

## V.   SPOLIATION

9. Ms. Plowman hereby requests and demands that Genesys preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including investigation reports, statements, photographs, videotapes, audiotapes, recordings, business records, financial records, bills, estimates, invoices, checks, measurements, equipment, correspondence, memoranda, files, facsimiles, email, voice mail, text messages, and any electronic image, digital data, or information related to the referenced incident and allegations herein. Failure to maintain such items will constitute "spoliation" of the evidence.

## VI.   FACTS

10. On June 13, 2022, Ms. Plowman began her employment with Genesys as a Senior Human Resources (HR) Business Partner for the Product organization. In this role, Ms. Plowman provided people strategy thought partnership to multiple global executives spanning several functional segments of the product organization. As a practical matter, Ms. Plowman was a soundboard for leaders in this position who resonated with different ideas to develop the human capital of the organization, in essence to ask better questions, advance faster, and focus on priorities. Ms. Plowman was extremely qualified in this role since she had served in this position for various prestigious companies in the past. Ms. Plowman's work ethic and commitment to tasks was unmatched, as was acknowledged by Genesys very early on in her tenure.

11. Genesys was extremely impressed with Ms. Plowman's positive work performance which led to Ms. Plowman being asked to lead a global reduction in force program, namely 'Fulcrum',

only a month after her initial employment date, in July of 2022. This elevated role required cross-functional partnerships spanning multiple business functional units. However, Ms. Plowman gladly accepted this additional responsibility, seeing as she was quite qualified in this arena, and wanted to showcase her talent and skills as a newly joined employee of the company.

12.     Only a few months later, in December 2022, Ms. Plowman was again asked to co-lead a smaller, secondary reduction in force program, namely 'Accelerate', impacting the global sales organization. In February 2023, Ms. Plowman even received an 'All-star' award for her work on this program.

13.     Subsequently however, Ms. Plowman became aware that the HR Vice President, Andrea Osborne (hereinafter "Ms. Osborne") had been making unsolicited and completely false remarks about Ms. Plowman and her work. These fabricated remarks were centered around Ms. Plowman's alleged inability to work cooperatively on a project, while Ms. Osborne was also recommending to colleagues that were on the same project as Ms. Plowman, to not work with her, and that Ms. Plowman 'needed to focus on her day job'. Ms. Plowman didn't comprehend the reason behind these baseless accusations, nor did she feel they were justified.

14.     Thus, on May 2, 2023, on the advice of her HR representative, after discussing her concerns, Ms. Plowman sent an email to Ms. Osborne inquiring about her comments and other suspicious actions that Ms. Osborne was taking to demean and belittle Ms. Plowman. Ms. Plowman had been with Genesys for just short of a year and she did not want any unnecessary complications in her job. Ms. Osborne responded and provided a general and vague reply that seemed to promise consideration for the matter at hand, and yet, only escalated the situation.

15.     Ms. Osborne stated that she would discuss the matter with Ms. Plowman at a future scheduled meeting. When this meeting ultimately took place on May 3, 2023, Ms. Osborne

provided examples of Ms. Plowman's actions that she did not appreciate that were either fabricated, misinterpreted or taken out of context. While hearing Ms. Osborne's concerns, Ms. Plowman realized that all of Ms. Osborne's concerns were all related to Ms. Plowman's ADHD diagnosis. On May 3, 2023, When Ms. Plowman explained to Ms. Osborne that the issues were ADHD-related and asked about workplace accommodations. Ms. Osborne responded that she was unfamiliar with that issue, and additionally, that she did not know how to manage an employee with ADHD. Ms. Plowman felt that Ms. Osborne was ridiculing and belittling her disability. Ms. Osborne did not request any additional medical information from Plowman regarding her disability or accommodations following this conversation. Furthermore, Ms. Plowman felt that Ms. Osborne was discriminating against her due to her disability since she was subjecting her to disparate treatment solely on the basis of her disability.

16. Ms. Plowman felt very uncomfortable after speaking with Ms. Osborne. Ms. Plowman assessed that Ms. Osborne would not be accommodating Ms. Plowman's disability, and instead was intent on effectively criticizing and mocking her disability, and her work performance, due to it. Ms. Plowman did not feel that this relationship would be healthy going forward. Although Ms. Plowman hesitated to file a formal complaint due to fear of retaliation, she felt that she had no choice but to express her concerns and to at least explore her options. Ms. Plowman felt that Ms. Osborne would hinder Ms. Plowman's success at Genesys and things would not change in the foreseeable future.

17. As such, On May 4, 2023, Ms. Plowman had a conversation with Eva Majercsik (hereinafter "Ms. Majercsik"), the Chief People Officer at Genesys. Although Ms. Majercsik did not sympathize with Ms. Plowman's concerns, she offered her a solution in the form of an internal transfer within the company, namely an HR Transformation Program Manager role. Ms. Plowman

agreed to this and expressed interest.

18. Unfortunately, what Ms. Plowman had feared was what happened next. Once Ms. Osborne found out about Ms. Plowman's meeting with Ms. Majercsik, she immediately expressed her distaste for it. Ms. Osborne immediately began gathering feedback from colleagues inciting negative comments and perceptions about Ms. Plowman and her workplace behavior. Ms. Osborne defended her position by stating that she was "trying to get to the bottom" of Ms. Plowman's accusation against her of damaging her work reputation.

19. However, this could be no further from the truth since Ms. Osborne also admitted to intentionally seeking out certain individuals for their feedback and intentionally leaving out many others from her inquiries. This clarified Ms. Osborne's motives in collecting information against Ms. Plowman, and only reassured Ms. Plowman that Ms. Osborne did not seek to ask any neutral or unbiased colleagues about Ms. Plowman's work. Ms. Oborne's agenda was becoming increasingly clear.

20. On May 10, 2023, Ms. Plowman documented her concerns and complaints to Matt Newman (hereinafter "Mr. Newman"), Vice President of HR, and Angel Moran (hereinafter "Ms. Moran"), Manager of HR, in an email. She included details of Ms. Osborne's discriminatory actions against her. There were many unsubstantiated claims about Ms. Plowman, which later turned out to be fabricated, and Ms. Plowman felt attacked. During this process, the HR Transformation role was posted. This was the role that Ms. Majercsik previously discussed with Ms. Plowman. At this juncture, Ms. Plowman was enthusiastic about transferring, as she could no longer tolerate the hostile environment that she was subjected to daily by her manager, Ms. Osborne.

21. On May 25, 2023, Ms. Plowman interviewed for the HR Transformation role.

22.     On May 31, 2023, Ms. Plowman attended her second and third interviews for the role.

23.     Although Ms. Plowman was patiently waiting for her transfer, the wait was becoming increasingly difficult since Ms. Osborne continued subjecting Ms. Plowman to disparate treatment. To make matters worse, Ms. Plowman had not heard back from Mr. Newman or Ms. Moran about her documented complaint. As such, Ms. Plowman sent a request to Eniola Akinrinade (hereinafter "Ms. Akinrinade"), internal legal counsel, asking about the compliance complaint process. After a virtual meeting with Ms. Akinrinade, Ms. Plowman decided to file a formal complaint. This seemed like the only option Ms. Plowman had, since at this point, all precautionary efforts proved futile.

24.     Ms. Plowman filed her formal complaint on June 9, 2023, to Allen Chiu (hereinafter "Mr. Chiu"), internal legal counsel. Unfortunately, Ms. Plowman did not hear back from Mr. Chiu, despite following up again a week later.

25.     On June 12, 2023, Ms. Plowman emailed additional information and documentation regarding her Formal Complaint to Mr. Allen Chiu, where Ms. Plowman stated that she had ADHD and that she had self-identified to Ms. Osborne as having ADHD, a disability covered under the ADA. Additionally, Ms. Plowman included her previous discrimination complaints against Ms. Osborne.

26.     On June 16, 2023, Ms. Plowman had another interview for the HR Transformation role. On this day, Ms. Plowman was told by Ms. Majercsik that all of a sudden, her chances of obtaining the position were very slim. Ms. Plowman considered it very strange that her chances significantly reduced immediately following her formal complaint. Ms. Plowman was starting to notice a united effort to retaliate against her.

27.     On June 21, 2023, Ms. Plowman received an email from Ms. Akinrinade letting her know

that her complaint was being transferred and handled by external legal counsel, which was allegedly impartial and unbiased.

28. Ms. Plowman was finally updated about the HR Transformation role on June 22, 2023. Ms. Plowman was qualified for the position however Ms. Plowman was denied the role. Ms. Plowman was told that she did not get the role due to her alleged behavior during a special meeting. In this meeting, Ms. Plowman was 'standing the whole time' and casually 'covering her mouth with her hand' for the duration of the meeting. Ms. Plowman made it very clear that the reason behind her behavior was her ADHD and directly related to her disability. Ms. Plowman was denied an opportunity due to her disability. At no point did Genesys think of accommodating her disability, rather than just denying her opportunities.

29. Determined to transfer to another role, Ms. Plowman reached out to Liz Clifford (hereinafter "Ms. Clifford"), Vice President of HR, to inquire about a role on her team. This role was offered to Ms. Plowman, and she accepted the role on June 26, 2023. Ms. Plowman explained to Ms. Clifford her disability of ADHD and even discussed requesting accommodation to avoid any complications such as before. The requested accommodations were that she be allowed to put her hand over her mouth, be able to stand and take notes, and take breaks.

30. On June 27, 2023, Ms. Plowman supplemented her complaint to legal counsel with details of the discrimination and retaliation she faced by losing a role due to her disability.

31. On July 16, 2023, Ms. Plowman started her new role under Ms. Clifford.

32. On August 8, 2023, Ms. Plowman received a response from the external counsel informing her that her complaint had been investigated and her complaint was determined unsubstantiated.

33. On August 14, 2023, Ms. Plowman officially requested accommodation for her disability.

34. On September 4, 2023, Ms. Plowman submitted her medical documentation to her

employer in support of her request for accommodation for her disability.

35.  On October 12, 2023, Ms. Plowman had a meeting scheduled with Mr. Chiu in regard to the process of the requested accommodation. On the morning of October 12, the day of the meeting, Mr. Chiu requested to reschedule the call to October 16, 2023, as Ms. Plowman was going to be on vacation on October 13, 2023.

36.  When Ms. Plowman returned on October 16, 2023, the meeting was cancelled, and no reason was provided. On the same day, Ms. Plowman was terminated based on baseless and fabricated reasons, with absolutely no evidence to prove said claims. Ms. Plowman was not given an opportunity to present her defense. Ms. Plowman was discriminated against due to her disability, and Genesys also failed to accommodate her. Lastly, Ms. Plowman was retaliated against for filing an official complaint and requesting accommodations due to her disability. Genesys subjected Ms. Plowman to disparate treatment and failed to accommodate or acknowledge her disability and retaliated against her with a pretextual termination of her employment.

## VII.   CAUSES OF ACTIONS

### *AMERICANS WITH DISABILITIES ACT (ADA)*

37.  Ms. Plowman reasserts and incorporates by reference all the above-numbered paragraphs as if fully set forth herein.

38.  Ms. Plowman has a disability, as she suffers from Attention Deficit Hyperactive Disorder (ADHD), a condition that, among other things, affects her movements and actions during meetings. This impairment is a disability within the meaning of the Americans with Disabilities Act (ADA). Ms. Plowman is nevertheless qualified to perform the essential functions of her job as Senior Human Resources Business Partner, with or without reasonable accommodation, and has suffered

9

an adverse employment action, termination, because of her disability.

39.     Ms. Plowman is an employee within the meaning of the ADA.

40.     Genesys is an employer within the meaning of the ADA as they are engaged in an industry affecting commerce, specifically the cloud customer experience and contract center solutions, and have 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

### First Cause of Action: Disability Discrimination under the ADA

41.     Ms. Plowman reasserts and incorporates by reference all of the above numbered paragraphs as if fully set forth herein.

42.     The Americans with Disabilities Act prohibits discrimination against any qualified individual on the basis of their disability. *See* 42 U.S.C. § 12112.

43.     Genesys violated the ADA by intentionally discriminating against Ms. Plowman on the basis of her disability. Ms. Plowman is disabled as she suffers from ADHD. Genesys' discriminatory acts include its failure to promote Ms. Plowman to the HR Transformation Role, failure to accommodate Ms. Plowman due to her disability, and termination of Ms. Plowman's employment. Genesys treated similarly situated, non-disabled employees more favorably than Ms. Plowman.

### Second Cause of Action: Hostile Work Environment under the ADA

44.     Ms. Plowman reasserts and incorporates by reference all of the above numbered paragraphs as if fully set forth herein.

45.     Genesys violated the ADA by subjecting Ms. Plowman to a hostile work environment due to her disability. Ms. Plowman is disabled as she has ADHD and was subjected to unwelcome harassment based on her disability of ADHD, such as being criticized and mocked for her disability

by her employer and subjected to a hostile work environment on a daily basis. She was also penalized for bodily movements such as standing up and covering her mouth which are related to her disability. Furthermore, Ms. Plowman notified her employer of the discriminatory and harassing actions and retaliation she was experiencing, but the matter was not addressed.

### Third Cause of Action: Failure to Accommodate

46. Ms. Plowman reasserts and incorporates by reference all of the above numbered paragraphs as if fully set forth herein.

47. The ADA imposes an affirmative duty on covered employers to reasonably accommodate the known physical and mental limitations of their disabled employees, and a failure to make such an accommodation is a prohibited form of discrimination. *See* 42 U.S.C. § 12112(a), (b)(5).

48. On or around May 2023, Ms. Plowman informed Ms. Andrea Osborne that she was disabled with ADHD and asked about workplace accommodations. Ms. Osborne belittled and dismissed Ms. Plowman's concerns and stated she was unfamiliar with the issue.

49. On or around June 2023, Ms. Plowman also communicated her disability to Ms. Clifford, and request for accommodations that she be allowed to put her hand over her mouth, be able to stand and take notes, and take breaks.

50. On August 14, 2023, Ms. Plowman also sent an email to her employer requesting accommodations for her disability and provided medical documentation in support of her request on September 4, 2023. Following these requests, accommodations were not provided for Ms. Plowman during her employment.

### Fourth Cause of Action: Retaliation under the ADA

51. Ms. Plowman reasserts and incorporates by reference all of the above numbered paragraphs

as if fully set forth herein.

52. The Americans with Disabilities Act prohibits discrimination (retaliation) against any individual because such individual has opposed any act made unlawful by the ADA or has requested accommodations under the ADA. *See* 42 U.S.C. § 12203; *see also Vincent v. College of the Mainland*, 703 F. App'x 233, 239 (5th Cir. 2017).

53. Ms. Plowman engaged in protected activity by requesting reasonable accommodations under the ADA and complaining of disability discrimination to her employer. Genesys unlawfully retaliated against Ms. Plowman by failing to promote her to the HR Transformation Role, terminating her employment within two months after she made her written request for accommodation for her disability under the ADA.

## VIII.   DAMAGES

54. Ms. Plowman sustained damages as a result of the actions and/or omissions of Genesys as described herein. Accordingly, Ms. Plowman is entitled to an award of actual and compensatory damages, including lost wages and benefits in the past and future, in an amount within the jurisdictional limits of the Court. Ms. Plowman also seeks an award of damages for the mental anguish and pain and suffering she has suffered, continues to suffer, and will suffer in the future.

55. Additionally, as a result of Genesys' above-referenced actions and/or omissions, Ms. Plowman was required to retain counsel to protect and enforce her legal rights. Accordingly, Ms. Plowman also seeks compensation for her attorneys' fees, as well as out-of-pocket expenses, expert fees, and costs of Court she will have incurred in this action.

## IX.   PUNITIVE DAMAGES

56. Ms. Plowman would further show that the acts and/or omissions of Genesys complained of herein were committed with malice or reckless indifference to her protected rights. In order to

punish Genesys for engaging in unlawful employment actions and to deter such actions and/or omission in the future, Ms. Plowman also seeks recovery from Genesys for punitive damages.

## X.    JURY DEMAND

57.    Ms. Plowman demands a jury on all issues to be tried in this matter. Ms. Plowman has submitted the jury demand and herein submit the jury fee.

## XI.    PRAYER FOR RELIEF

58.    For the reasons set forth above, Ms. Plowman respectfully prays that Genesys be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for her against Genesys for:

a. All damages to which Ms. Plowman may be entitled to pursuant to this Original Complaint, or an amendment thereto, including but not limited to back pay, reinstatement, upgrading, and compensation for benefits not received;

b. Lost wages in the future;

c. Past physical pain and mental suffering;

d. Future physical pain and mental suffering;

e. Punitive damages in the amount above the minimum jurisdictional limits of the Court;

f. Reasonable attorneys' fees as allowed by law, with conditional awards in the event of appeal;

g. Prejudgment interest at the highest rate permitted by law;

h. Post-judgment interest from the judgment until paid at the higher rate permitted by law;

i. Costs of Court; and

j. Such other and further relief, at law or in equity, to which Ms. Plowman may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully Submitted,
TB Robinson Law Group, PLLC

_____
Terrence B. Robinson
Fed. Bar No. 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
Claudia Casas
Fed. Bar No. 3573914
Texas Bar No.: 241110850
Email: Ccasas@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF,
CARRIE PLOWMAN**